PEOPLE, PLAINTIFF AND APPELLANT, *v.* GONZÁLEZ, DEFENDANT
AND APPELLEE.

APPEAL from the District Court of Ponce in a Prosecution
for Incest.

No. 1265.—Decided June 20, 1918.

INCEST — NATURAL CHILD — INFORMATION. — An information which alleges that
the accused had carnal intercourse with his unacknowledged natural daughter
charges the commission of the crime defined and penalized by section 275
of the Penal Code.

ID.—ID.—Under our laws a man who has carnal intercourse with his daughter
is guilty of incest, whether she is acknowledged or not.

ID.—ID.—INVESTIGATION OF PATERNITY.—The general rule that the paternity of
a child may not be investigated—*i. e.*, that the courts may not be invoked to
establish a civil relation between father and child—is fundamentally rather
a rule of property than of anything else. The criminal law is different
and section 275 of our Penal Code was aimed to prevent carnal intercourse
between persons having a blood relation within the grades of consanguinity
in which marriage is forbidden.

The facts are stated in the opinion.

*Mr. Salvador Mestre, fiscal,* for the appellant.

*Mr. R. Martínez Nadal* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

Miguel González was charged with the crime of incest in
having carnal intercourse with his unacknowledged natural
child, Eloísa López, known as González. The court sustained
a demurrer to the information and the Government appealed.

The examination which we have made of the authorities
convinces us that the rule in the United States is that a father
may be convicted of incest for having sexual intercourse with
his natural daughter, provided the statute is drawn similarly
to our own, which is as follows:

"Persons being within the degrees of consanguinity within which
marriages are declared by law to be void, who intermarry with each
other, or who commit fornication or adultery with each other, are
punishable by imprisonment in the penitentiary not exceeding ten
years." (Sec. 275, Penal Code.)

This section has a note appended to it which does not

appear to be taken from our own Civil Code or from its Spanish equivalent, as follows:

"*Incestuous marriages.*—Marriages between parents and children, ancestors and descendants of every degree, and between brothers and sisters of the half as well as the whole blood, and between uncles and nieces, or aunts and nephews, are incestuous and void from the beginning, whether the relationship is legitimate or illegitimate."

Section 132 of the Civil Code however says:

"Nor can the following contract marriage with each other:

"1. Ascendants or descendants by consanguinity or affinity.

"2. Collaterals by consanguinity within the fourth degree.

"3. The adoptive father or mother and the person adopted; the latter with the surviving husband or wife of the adopter; and the adopter with the surviving husband or wife of the adopted.

"4. The legitimate descendants of the adopter with the adopted person during the time the adoption exists.

"5. The parties to an adultery who have been convicted by a final judgment for five years after.

"6. Those who have been condemned as principals or as principal and accomplice responsible for the death of the husband or wife or either of them."

This section as written would not cover the case of an acknowledged natural child unless the word "descendants" covers such a case, and no one in this country would doubt that a man could not contract marriage with his acknowledged natural daughter, and hence he would be guilty of incest in having communication with her.

The court below bases its decision partly on the ground that the parental relation in a case of this kind ought to be beyond discussion, and that as the information alleged that the daughter had not been acknowledged, there was no legal relation between the parties. In other words, that the law demands in this class of cases that some legal relation exist. This theory of the court is founded on the rule which generally prevails that the paternity of a child may not be investigated. We interpret this rule to mean that the courts may

not be invoked to establish a civil relation between father and child, probably for the protection of property rights and of the tremendous inconvenience to which society would be subjected if suits of this kind could be indiscriminately begun. It is fundamentally more a rule of property than it is of anything else. But the sanction of the criminal law is very different and this section of the code was aimed to prevent communication between two persons having a blood relation within certain forbidden degrees. "Within the degrees of consanguinity which are declared to be void," says the law. Having no doubt that a marriage between these two persons could be declared illegal, we have no doubt that the information stated a crime. Cases in the United States supporting the conclusion at which we have arrived are as follows: *People* v. *Lake,* 110 N. Y. 61; *Cecil* v. *Commonwealth,* 131 S. W. 782; *Clark* v. *State,* 45 S. W. 576; *Wadkins* v. *State,* 124 S. W. 959; *Lipham* v. *State,* 53 S. E. 817; 14 R. C. L. 33.

We are aware of the decisions of this court in civil matters that the word "child" means generally a legitimate child, but here we are treating of the carnal connection of any two persons who have no legal right to marry. We cannot agree with the appellant that a marriage between himself and his illegitimate daughter would have been legal or in any way countenanced by our laws.

It may be that the courts should watch the proof in prosecutions of this kind with great care, inasmuch as fraud or blackmail might be "perhaps" attempted. No man ought to be convicted on a charge of this kind unless the statement of the alleged mother was well corroborated. We have frequently said that in filiation cases the proof ought to be strong, and the proof in a case of this kind would have to be even stronger. This is only another way of saying that a defendant is entitled to careful instructions on the matter of reasonable doubt.

The order appealed from must be

*Reversed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.